IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA - Charlottesville Division

**MOHAMMED AZIMI,**
  **Plaintiff,**
  v.
**JOSEPH D. PLATANIA,** in his official capacity as Commonwealth's Attorney for the City of Charlottesville,
and
**NINA-ALICE ANTONY,** in her official capacity as Deputy Commonwealth's Attorney for the City of Charlottesville,
  **Defendants.**

Civil Action No. 3:26 CV 1

CLERK'S OFFICE U.S. DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

JAN 05 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Kim Barr
  DEPUTY CLERK

**COMPLAINT** (Declaratory and Injunctive Relief Sought; No Monetary Damages)

**Plaintiff Mohammed Azimi,** proceeding pro se, brings this action under 42 U.S.C. § 1983 for violation of his First Amendment right of access to public records. Plaintiff seeks only declaratory and prospective injunctive relief to compel the production of official records identifying the presiding judge and related judicial assignment records for the week of April 8-12, 2024. In support of this Complaint, Plaintiff alleges as follows:

**Parties**

- **Plaintiff Mohammed Azimi** is a resident of Virginia and a citizen deeply interested in the transparency and integrity of the judicial process. Plaintiff has been engaged in litigation and court-monitoring activities in Charlottesville, VA, and he sought records to confirm which judge(s) presided over court proceedings in Charlottesville during the week of April 8-12, 2024. Plaintiff has a specific need for these records to verify the identity of the presiding judge on those dates and to ensure the accuracy of the judicial record.

- **Defendant Joseph D. Platania** is the Commonwealth's Attorney for the City of Charlottesville, sued in his official capacity only. As the elected Commonwealth's Attorney, Defendant Platania is the head of the Office of the Commonwealth's Attorney for Charlottesville ("OCA"). By law, he and his Office are custodians of certain public records and are responsible for responding to Virginia Freedom of Information Act requests for records in the Office's possession. At all relevant times, Defendant Platania was acting under color of state law. He is a "person" within the meaning of 42 U.S.C.

§ 1983 when sued for prospective relief in his official capacity.

- **Defendant Nina-Alice Antony** is the Deputy Commonwealth's Attorney for the City of Charlottesville, sued in her official capacity only. On information and belief, Defendant Antony assists Defendant Platania in managing OCA and was directly involved in processing Plaintiff's records request. In particular, Defendant Antony was a point of contact in communications regarding the request and the production of records. She, too, acts under color of state law and is a "person" under § 1983 for purposes of declaratory and injunctive relief.

*(No claims are brought against Defendants in their individual capacities, and no damages are sought. The Office of the Commonwealth's Attorney for the City of Charlottesville is not named as a separate defendant, as the suit against the Commonwealth's Attorney in his official capacity is effectively a suit against the office.)*

**Jurisdiction and Venue**

1. **Jurisdiction:** This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Constitution and laws of the United States, specifically the First and Fourteenth Amendments and 42 U.S.C. § 1983. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because Plaintiff seeks to redress the deprivation of civil rights under color of state law. Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202.

2. **Venue:** Venue is proper in the Western District of Virginia pursuant to 28 U.S.C. § 1391(b). The Defendants are located in Charlottesville, Virginia, which lies within this District, and the events or omissions giving rise to the claims occurred in this District. Plaintiff's records request was directed to, and denied by, officials in Charlottesville. Therefore, a substantial part of the events or omissions at issue occurred in this District and Division (Charlottesville Division).

3. **Ex parte Young Exception:** Plaintiff seeks only prospective relief to remedy ongoing violations of federal law, namely the continued denial of access to public records in violation of the First Amendment. Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), suits against state or local officials in their official capacities for prospective injunctive and declaratory relief are not barred by sovereign immunity. Accordingly, the Eleventh Amendment and related immunity doctrines do not preclude this action.

4. **Standing:** Plaintiff has standing because he requested specific public records, Defendants refused to provide full access to those records, and Plaintiff is thereby suffering concrete and particularized injury (the inability to obtain information to which he is entitled). This

injury is directly traceable to Defendants' actions and would be redressed by the declaratory and injunctive relief sought.

5. **No Mootness:** This case is not moot. Defendants have not produced the core records Plaintiff requested. Even if Defendants were to belatedly produce additional records, a live controversy would remain over Plaintiff's entitlement to a declaratory judgment and over whether Defendants' search was adequate and their withholding of any portions is lawful. Absent court intervention, nothing prevents Defendants from continuing to withhold or from failing to properly search for the requested records in the future.

6. **No Ongoing State Proceedings:** There is no ongoing state proceeding addressing Plaintiff's right to these records. Plaintiff has not filed a state FOIA enforcement action, and no criminal or civil case in state court will decide the issue of access to these administrative judicial records. Therefore, principles of abstention (such as *Younger* abstention) do not apply.

7. **No Rooker-Feldman Bar:** Plaintiff does not seek to overturn or invalidate any state-court judgment. This lawsuit is not an appeal of any state-court decision, but rather an independent action asserting constitutional rights. Thus, the **Rooker-Feldman** doctrine is not implicated.

8. **Prosecutorial Immunity Inapplicable:** Absolute prosecutorial immunity shields prosecutors from personal liability for damages for actions intimately associated with the judicial phase of the criminal process. Here, however, Plaintiff seeks no damages and challenges an administrative records-handling action. Prosecutors do not enjoy absolute immunity from suits for declaratory or injunctive relief in their official capacity. In any event, responding to FOIA requests or providing access to records is an administrative function, not a core prosecutorial act, so immunity is not a defense in this context.

9. **Qualified Immunity Inapplicable:** Qualified immunity likewise is no defense here, as Plaintiff sues Defendants only in their official capacities and seeks no personal monetary relief. Official-capacity claims for prospective relief are essentially claims against the government entity and are not subject to individual immunities. Even if considered, the right of public access to judicial records is clearly established by precedent (as detailed below), and no reasonable official would believe it lawful to refuse to provide records that identify who a presiding judge was for open court proceedings absent a compelling justification.

**Factual Allegations**

**Plaintiff's FOIA Request and Defendants' Response (Exhibit 1)**

10. In late 2025, Plaintiff submitted a written request under the Virginia Freedom of Information Act (Va. Code § 2.2-3700 *et seq.*) to the Office of the Commonwealth's Attorney for Charlottesville. The request specifically sought **all records that would identify the presiding judge (or judges) and any substitute judges or judicial officers who actually presided in court proceedings in Charlottesville during the week of April 8-12, 2024**, as well as related administrative records (such as judicial attendance logs, assignment rosters, or any orders of appointment for substitute judges) for that week. The purpose of the request was to verify who exercised judicial authority on each day of that week, particularly in light of information that the regularly assigned judge (Judge Pather) may have been absent due to illness.

11. On January 2, 2026, Defendant Platania, through his Office, responded in writing to Plaintiff's FOIA request. **Exhibit 1** is a true and correct copy of the response letter dated January 2, 2026. In that letter, the Commonwealth's Attorney's Office stated that "attached hereto are all records in the possession, custody or control of this Office that are responsive to your request"[Ex. 1, at 1]. The letter further indicated that the Office had located one specific record - *a Juvenile Delinquency Docket for April 10, 2024* - which it was withholding under claimed exemptions. The letter cited Va. Code § 2.2-3704(B)(2) and Va. Code § 16.1-305(C) as the basis for exemption, asserting that the juvenile docket is a confidential record that could not be disclosed[Ex. 1, at 1-2]. Aside from this juvenile docket (which was identified but not produced), the letter implied that **all responsive records** were being provided in the attachments.

12. The FOIA response letter (Ex. 1) did not describe any other records being withheld or any categories of records that might have been outside the Office's custody. It gave no indication that the Office had searched for, or considered, records like judicial assignment logs or substitute judge appointment orders. It simply concluded that everything responsive was included in the attachment (except the juvenile docket being withheld)[Ex. 1, at 1]. Relying on this representation, one would expect the attachments to contain documents sufficient to show who presided in court that week.

**Records Produced: Internal Emails (Exhibits 2-6)**

13. **Exhibits 2 through 6** are the records that Defendants attached to the FOIA response letter as the purportedly responsive documents. These exhibits consist entirely of email communications among personnel of the Commonwealth's Attorney's Office and others, and notably **none** of them is an official court record such as a docket sheet, attendance

log, or judicial order. The content of these emails is summarized below:

- **Exhibit 2:** An email sent on Monday, April 8, 2024 at 5:37 PM (from an Assistant Commonwealth's Attorney to other staff). The **subject line** reads *"Canceled for 9/8/24,"* but the **body** of the email states: "The interviews scheduled for tomorrow are canceled because Judge Pather is out sick."[Ex. 2, at 1]. This email is plainly an informal internal notice. It contains an internal inconsistency: the subject refers to a date in September 2024, while the email was actually sent in April 2024 referring to "tomorrow" (April 9, 2024). This mismatch suggests a clerical mistake or template reuse. Importantly, **Exhibit 2 is not an official judicial assignment or attendance record**; it is merely an office email indicating that some interviews planned for April 9, 2024 would not proceed due to Judge Pather's illness.

- **Exhibit 3:** An email chain initiated on April 1, 2024 at 6:55 PM, involving OCA staff and possibly court personnel. The discussion in this chain concerns **planning for judicial interviews at the courthouse on Tuesday, April 9, 2024 at 12:00 PM**[Ex. 3, at 1]. It appears to be scheduling correspondence, likely arranging a panel or meeting ("interviews") that would involve a judge. While this provides context (that something was scheduled for April 9 and Judge Pather was expected to participate), **it is not a record that shows who actually presided over any court proceeding** on that date.

- **Exhibit 4:** An email chain including a message sent on Tuesday, April 9, 2024 at 2:20 PM with the subject "FTC Board meeting." In this email, a staff member announces that the Family Treatment Court ("FTC") Board meeting scheduled for that day (April 9) at 2:30 PM is canceled **"due to the judge being out with illness."**[Ex. 4, at 1]. The chain includes a subsequent reply sent on Thursday, April 11, 2024 at 12:02 PM, where another participant acknowledges the cancellation[Ex. 4, at 2]. **Exhibit 4** again reflects an internal administrative event (a specialty court board meeting) being canceled because the judge (presumably Judge Pather) was unavailable. Like the others, it **is not an official record of who presided in court** proceedings; it only indicates that on April 9, 2024, the judge's illness impacted certain meetings.

- **Exhibit 5:** An email dated February 27, 2024, regarding an FTC Board meeting[Ex. 5, at 1]. This email predates the week of April 8-12, 2024 by over a month. It appears to be included in the production despite falling outside the scope of Plaintiff's request (which was limited to records for April 8-12). The February 27 email may be part of an earlier chain about scheduling FTC Board meetings.

- **Exhibit 6:** An email dated February 28, 2024, also concerning an FTC Board meeting[Ex. 6, at 1]. Like Exhibit 5, this is outside the requested date range. Both

Exhibits 5 and 6 suggest that Defendants' production included some **non-responsive documents** (perhaps because they were part of an email thread or were misidentified as relevant). Their inclusion tends to *pad* the production with extra pages, without shedding light on the central issue of who was presiding in court during April 8-12, 2024.

14. In summary, the documents produced by Defendants (Exhibits 2-6) consist solely of **informal internal emails** about scheduling interviews and cancelling meetings due to a judge's illness. These emails do **not** contain any direct evidence of which judge (if any) actually presided over court dockets or cases on the dates in question. They confirm that Judge Pather was ill and out of the office around April 9, 2024, but they do not identify who, if anyone, took her place on the bench for court proceedings in her absence. Notably:

- The production **did not include any "judicial attendance logs" or sign-in sheets** that some courts maintain to record which judge is present and presiding on a given day.

- The production **did not include any court assignment schedules or daily rosters** that show which judges were assigned to each courtroom or docket for each day of that week.

- The production **did not include any administrative orders or written designations of a substitute judge** for the dates Judge Pather was out (for example, when a Virginia state judge is unable to hold court, there is often an order assigning a substitute judge or a record of a retired judge or another judge stepping in).

- The production **did not include any portion of the court's docket sheets or case file orders** from April 8-12, 2024 that would list the presiding judge's name. (Typically, a final order or a docket entry in a case will bear the name or signature of the judge who decided the matter. None were provided.)

- Other potentially relevant records - such as **bench calendars** (internal calendars indicating which judge covers which courtroom on a given day), **hearing minutes**, or **pay vouchers for substitute judges** - were **not produced.**

In short, the **Defendants' response was nonresponsive and incomplete**: it provided only a handful of emails that **do not answer the fundamental question** of who actually presided in court during the week of April 8-12, 2024.

15. The **withholding of the Juvenile Delinquency Docket for April 10, 2024** exacerbates the issue. Defendants admitted that such a docket exists in their possession (likely obtained because prosecutors receive court dockets, including juvenile dockets, as part of

their daily business) and that it covers at least one day in the requested range (April 10, 2024)[Ex. 1, at 1-2]. However, they refused to provide it, citing Va. Code § 16.1-305(C). Section 16.1-305(C) is a Virginia statute that generally makes juvenile court records confidential, to protect the privacy of juveniles. Plaintiff acknowledges the sensitivity of juvenile case information, but **notes that the identity of the presiding judge is not the sort of information that § 16.1-305 seeks to keep confidential**. The names of juvenile defendants or other parties could be redacted or omitted, while still disclosing the judge's name. Defendants did not attempt any such segregation; they did not provide a redacted docket or even disclose the judge's identity separately. By withholding the entire docket, Defendants effectively concealed the information about who the judge was on April 10, 2024, even though that information itself poses no privacy risk. Defendants also failed to provide a **privilege/log** or index beyond the brief mention in the letter, leaving Plaintiff in the dark about whether **any other records** were withheld or never searched for.

### Plaintiff's Follow-Up and Defendants' Failure to Cure (Exhibit 7)

16. On January 3, 2026, after reviewing the paltry and off-target production, Plaintiff sent a timely **follow-up letter to Defendant Platania's Office** (Commonwealth's Attorney) to outline the deficiencies and to request further action. **Exhibit 7** is a true and correct copy of Plaintiff's letter dated January 3, 2026. In this letter, Plaintiff detailed how the production failed to include the specific types of records that were requested and **highlighted the inconsistencies and scope issues** in what was provided:

- Plaintiff noted that the records produced were **informal internal emails** that **do not constitute official records of judicial assignments or attendance**. The letter pointed out that simply knowing a judge was "out sick" (from an email) does not tell who, if anyone, took over the judge's duties on that date. Plaintiff emphasized that he had requested **official documentation identifying who presided**, not just commentary about a judge being absent.

- Plaintiff further observed that some emails (Exhibits 5-6) pre-dated the week of interest and thus were **nonresponsive**. Their presence raised concerns that the search parameters used by Defendants were either overbroad or poorly targeted (for example, perhaps someone searched inboxes for the term "Judge Pather" or "FTC" and grabbed all hits, even those outside the date range).

- The internal inconsistency in Exhibit 2's subject line ("Canceled for 9/8/24") was highlighted as an example of the production's unreliability. If anything, it suggested that a more thorough review of the records was needed, as the meaning and context of that email were confusing without further explanation or metadata.

17. In **Exhibit 7**, Plaintiff specifically **enumerated categories of records** that were believed to exist or that should have been searched, reiterating the request in concrete terms. These categories included, *inter alia*:

- **Judicial attendance logs or timesheets** for the judges during April 8-12, 2024 (if any were maintained, showing which judge was present and presiding each day).

- **Daily court assignment schedules or bench rosters** for that week, indicating which judge was assigned to each courtroom or docket (and any changes thereto due to Judge Pather's absence).

- **Substitute judge appointment orders or vouchers** - for example, any order from the Chief Judge of the circuit or district court appointing a substitute judge to cover Judge Pather's docket on April 9 or other dates, and any associated documentation (such as a compensation voucher for a substitute judge, which would normally be generated if a substitute was called in).

- **Court docket sheets or signed orders from April 8-12, 2024** - for instance, if cases were heard on those dates, the orders resulting from those cases would bear the presiding judge's name or signature. Providing copies of such orders (with sensitive case details redacted if necessary) would inherently reveal who the judge was.

- **"Bench calendar" or internal calendars** for judges or courtrooms - if the court or OCA kept a calendar of who was scheduled to be on the bench each day (which is likely, at least informally), those entries for the week in question would identify the substitute arrangements.

- **Any communications or correspondence (emails, memos) specifically about arranging judicial coverage** for Judge Pather's court duties during her illness. (The produced emails showed cancellations of meetings, but there might also have been communications about covering court hearings - for example, an email from a court clerk or OCA administrator asking another judge to handle Judge Pather's docket.)

Plaintiff made clear in the letter that **these were the kinds of records contemplated by his request,** and that none of them had been produced.

18. Additionally, **Plaintiff requested that the emails which were produced (Exhibits 2-6)** be provided in their **native electronic format** (such as .eml or .msg files) with complete headers. The rationale was that the printed versions might have omitted certain information (like all recipients, including CC or BCC, or the exact date/timestamp with

time zone, etc.). For example, Exhibit 2's confusion might be clarified by looking at its metadata (perhaps it was part of an email thread that included a September scheduling later). Full headers could also show if the emails were forwarded or had attachments. Plaintiff indicated that reviewing the metadata could help ascertain whether those emails were forwarded from someone at the court or contained additional context not visible in the printouts[Ex. 7, at 2].

19. **Plaintiff's letter (Ex. 7)** expressly asked Defendants to treat this as a request to supplement and correct the FOIA response. Plaintiff urged Defendants to conduct an **adequate search** of all likely repositories for the requested records, including but not limited to email accounts of relevant personnel, OCA's case management or scheduling files, and any records obtained from court administrators. Plaintiff also requested that if Defendants continued to withhold any records (such as the juvenile docket or others), they should provide a **privilege/exemption log** itemizing what is withheld and under what specific exemption, and to release any reasonably segregable portion of such records (for example, disclosing the judge's name even if case details are withheld).

20. Despite this detailed follow-up, **Defendants did not produce any additional records nor provide any further justification.** As of the filing of this Complaint, **Plaintiff has received no substantive response** addressing the deficiencies. The Commonwealth's Attorney's Office has neither confirmed nor denied the existence of the specific record categories Plaintiff enumerated (beyond the juvenile docket already mentioned). They have not provided the emails in native format or given an explanation for any inability to do so. In short, the situation remains that **Plaintiff does not know who the presiding judge was on each of the dates April 8, 9, 10, 11, and 12, 2024** for the Charlottesville courts, because the officials who have that information have not released it.

21. The inability to ascertain **"who was the judge on the bench?"** during a public week of court proceedings is a significant harm to Plaintiff and to the public interest. Knowing the identity of the presiding judge is fundamental to public oversight of the judiciary: it enables litigants and observers to verify that proper procedures were followed (e.g., that a duly authorized judge or substitute heard the cases), to evaluate any potential bias or conflicts of interest, and to attribute responsibility for judicial decisions. Plaintiff has been **impeded in his ability to litigate and to seek redress in related matters** because he cannot confirm who took Judge Pather's place. For example, if Plaintiff or others intend to challenge any action that occurred in court that week, they need to name or at least know the judge who made the decisions. Without that, their access to courts and ability to frame legal arguments (such as a motion for reconsideration or an appeal arguing improper substitution) are hamstrung.

22. Every day that these records are withheld, Plaintiff's injury continues. The week of April 8-12, 2024 is now long past, but the question of **"who presided?"** remains unanswered in the public record. This is an ongoing denial of the right of access, which necessitates judicial intervention. Plaintiff files this lawsuit to obtain a declaratory judgment affirming his right to these records and an injunction compelling Defendants to finally conduct an adequate search and release the responsive records (or properly justify any limited redactions).

**Count I - 42 U.S.C. § 1983**

**First Amendment (and Article VI) - Denial of Right of Access to Judicial Records Necessary to Identify Presiding Judge**

23. **Incorporation of Allegations:** Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth here.

24. **First Amendment Public Access Right:** The First Amendment to the U.S. Constitution, as applied to the states through the Fourteenth Amendment, protects the right of the public and press to access certain governmental proceedings and records. It is well established that court proceedings, especially criminal trials, are presumptively open to the public (*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) (plurality opinion)) and that this openness extends to various stages of judicial proceedings and related documents (*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("Press-Enterprise II"); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982)). This right of access is not limited to the ability to sit in the courtroom; it encompasses a right to obtain information and records that are necessary to understand and follow the court's proceedings. As one court observed, *"Courts have interpreted Richmond Newspapers broadly, and make little distinction between the right of access to court proceedings and the right of access to court records."*. In the Fourth Circuit, it is "well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014); see also *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 580 (4th Cir. 2004) (recognizing strong public interests in access to court records).

25. **Coverage of Judicial-Administration Records:** The records sought by Plaintiff - documents identifying which judge presided over court proceedings on specific dates and related administrative assignments - are integral to the openness of those proceedings. Knowing *who* the judge was is a necessary part of understanding what transpired in court. Historically, the identity of the presiding judge has never been a secret aspect of a public trial or hearing; to the contrary, *the tradition of openness ("experience") applies to this information* just as it does to the proceeding itself. Court calendars and dockets, which

list cases and often the judges assigned, have generally been open for public inspection in courthouses. In terms of the functional value ("logic" prong), public access to the identity of the presiding judge plays a **significant positive role** in the judicial process. It promotes accountability (judges know their actions are attributable to them), enables public evaluation and critique of judicial performance, and ensures that any irregularities (such as an improper substitution or a conflict of interest) can be detected and addressed. By contrast, **withholding the identity of the judge** who handled a proceeding would shield the judicial process from scrutiny, undermining public confidence.

26. **Defendants' Actions:** By failing to provide the requested records, Defendants have denied Plaintiff (and the public) the ability to know who presided in the Charlottesville courts during April 8-12, 2024. This denial is an **ongoing act** under color of state law: Defendants, in their official capacities, have asserted that they have produced "all" responsive records while in fact **withholding the very information sought.** They have refused to perform an adequate search or to release known records (like the juvenile docket, even in redacted form). Through these actions, Defendants have effectively kept part of the judicial record secret. This **constitutes a deprivation of rights secured by the First Amendment,** giving rise to a cause of action under 42 U.S.C. § 1983.

27. **No Sufficient Justification:** The First Amendment right of access is a qualified right - it may be overridden only by a showing of a compelling interest and only if the denial of access is narrowly tailored to serve that interest (and after considering alternatives). Defendants have provided **no compelling justification** that would legally permit withholding of the presiding judge's identity:

    - The only reason cited was the confidentiality of juvenile records for one date (April 10, 2024). Even if protecting juveniles' privacy is a compelling interest, it **does not require concealing the name of the judge.** The judge's name could have been disclosed or the docket produced with juvenile names redacted. Defendants did not attempt any less-restrictive alternative.

    - Defendants have identified **no other interest** (such as security or anonymity concerns) that would justify keeping judge assignment records secret. Indeed, judges are public officials and their participation in court on given days is a matter of public record by default.

    - The blanket refusal to provide any of the key records (or even to say if they exist) is **not narrowly tailored.** It is an across-the-board denial of access to information that could have been provided in part or with redactions if truly necessary. Under Fourth Circuit law, even if some portion of a document is sensitive, the court must

release the rest after redaction rather than withhold entirely.

28. **Injury to Plaintiff:** Plaintiff has suffered and continues to suffer irreparable injury from this violation. He has been deprived of information that should be public. This injury is **particularized** to Plaintiff (who made the request and needs the information for his own litigation and oversight efforts), but it also implicates broader public interests that Plaintiff is in a position to assert. Because of Defendants' refusal:

    - Plaintiff cannot determine whether any proceedings he is concerned with during that week were conducted by a duly authorized judge or a substitute, which affects the validity and perceived fairness of those proceedings.

    - Plaintiff's ability to petition the government for redress (for example, to challenge any decisions from that week or to seek appellate review) is impeded since he cannot even name the judge in question in any such petition. This lack of basic information creates a procedural hurdle and *chills Plaintiff's access to the courts*, a fundamental right protected by the First and Fourteenth Amendments.

    - The denial of access is **ongoing**, meaning every day Plaintiff is without these records is a fresh injury. Money damages cannot repair this harm, as it is a loss of constitutional transparency. Only the **production of the records (or at least an adequate, court-supervised search and justification process)** can remedy it.

29. **Causation:** The actions of Defendants Platania and Antony, in their official capacities, are the direct and proximate cause of the injury. As the officials responsible for responding to records requests and as custodians (or liaisons to custodians) of the relevant records, their failure to search properly and their decision to withhold or not produce the records resulted in Plaintiff's deprivation of rights. Defendant Platania, as Commonwealth's Attorney, had the authority to obtain judicial assignment information (for example, from court administrators or via his office's records) but chose not to disclose it. Defendant Antony corresponded with Plaintiff and oversaw the assembly of the FOIA response; her actions contributed to the incomplete production. Both Defendants are in a position to correct the situation by conducting a thorough search and releasing the records, but to date they have not done so.

30. **Redressability:** The relief sought will redress Plaintiff's injuries. A declaratory judgment from this Court would affirm Plaintiff's First Amendment right to access the requested information, sending a clear message to Defendants that their continued withholding is unlawful. An injunction would compel Defendants to do what the Constitution requires: make a diligent search for the records and provide them (subject to any minimal

redactions truly necessary). Because the Defendants are the very officials who hold or control access to the records, an order directed at them will be effective in producing the records. Moreover, an injunction can require specific steps (such as creating a log of withheld material, or providing the records in native format) to ensure compliance and transparency. Such court-ordered actions are within Defendants' power to perform and would directly give Plaintiff the information he needs, thus remedying the informational injury.

31. **Qualified Right and Least Restrictive Means:** Plaintiff acknowledges that the right of access is qualified and that if Defendants had a valid reason to withhold certain details, they could seek to do so in a narrowly tailored way. However, Defendants have not pursued any less-restrictive means (for example, they did not ask the Court to review the juvenile docket in camera or propose releasing a redacted version). They instead effectively took an "all or nothing" approach, which is incompatible with First Amendment standards. The First Amendment presumes openness; the burden is on the government to justify secrecy, and here that burden has not been met. **Therefore, Defendants' complete refusal to provide the requested records violates Plaintiff's First Amendment rights.**

32. **Relief Requested:** Plaintiff is entitled to declaratory and injunctive relief to cure this violation. Pursuant to 42 U.S.C. § 1983 and § 1988(b), Plaintiff also seeks an award of costs and attorney's fees (to the extent he obtains counsel or such fees are available) as the prevailing party in an action to enforce his civil rights. No monetary damages are sought against Defendants.

*(Optional Count II - [Intentionally Omitted: Plaintiff does not assert a separate Count II at this time, but reserves the right to amend if necessary].)*

**Prayer for Relief**

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

1. **Declaratory Judgment:** A judgment declaring that Defendants' actions in failing to disclose the requested records violate Plaintiff's rights under the First Amendment. Specifically, declare that Plaintiff (and the public) have a right of access to judicial administrative records that identify the judges or judicial officers who presided over court proceedings during the week of April 8-12, 2024 (including any substitute judge assignments), and that Defendants' response to Plaintiff's request was inadequate and

unlawful to the extent it denied or failed to provide such records.

2. **Injunctive Relief - Adequate Search and Production:** A permanent **injunction** compelling Defendants, forthwith, to conduct a **thorough, good-faith search** for all records in their possession, custody, or control that are responsive to Plaintiff's request (as detailed in Exhibit 7 and this Complaint). This includes searching all relevant files, email accounts, and systems for:

   - Judicial attendance logs or daily assignment records for April 8, 9, 10, 11, and 12, 2024;

   - Court calendars or dockets indicating which judge was assigned or actually presided each day;

   - Any orders, notices, or written communications appointing or requesting a substitute judge for those dates;

   - Any court records (docket sheets, minutes, or orders) from that week that reflect the presiding judge's identity;

   - Any internal communications specifically about judicial coverage during Judge Pather's absence.

3. The injunction should further compel Defendants to **produce** all non-exempt responsive records to Plaintiff by a date certain. For any responsive record that Defendants assert is exempt or privileged (in whole or in part), they must **produce a log** as described in Paragraph 3 below and produce any segregable portions of such record.

4. **Injunctive Relief - Segregation/Log of Withheld Records:** An order requiring that if Defendants contend any portion of a responsive record is subject to a valid exemption (e.g., juvenile confidential information under Va. Code § 16.1-305), they must **redact** the minimal exempt portions and release the remainder. Along with the production, Defendants must provide a **detailed index or "withholding log"** describing any records or portions thereof that are withheld or redacted, stating for each:

   - the general nature/type of record (e.g., "Juvenile Delinquency Docket for April 10, 2024"),

   - the date of the record (if applicable),

- the specific reason for withholding/redacting (including citation to any statute or privilege), and

- an explanation why no further segregation of non-exempt information is possible.

5. This will allow the Court and Plaintiff to assess the validity of any claimed exemption while ensuring maximum disclosure.

6. **Injunctive Relief - Native Format Emails:** An injunction requiring Defendants to reproduce the email records previously provided (Exhibits 2-6) in their **native electronic format** (e.g., .msg or .eml files), with complete email headers and any attachments. If for some reason Defendants cannot produce a given email in native format, they must provide a **sworn declaration** detailing the efforts made to retrieve the native email and explaining why it is not available. (This relief is aimed at enabling Plaintiff to verify dates, recipients, and context for the communications already disclosed, as part of evaluating the adequacy of the search and the consistency of the records.)

7. **Preservation Order:** A narrowly tailored order requiring Defendants to **preserve** all records potentially relevant to Plaintiff's request and this lawsuit. This includes preserving:

    - any and all documents and communications concerning Plaintiff's FOIA request and Defendants' response (e.g., internal emails about searching for records, drafts of the response letter, etc.),

    - any records from April 2024 that are responsive or potentially responsive (even if Defendants believe they are exempt),

    - any records of document retention or deletion policies that could affect the existence of the requested records (such as email retention schedules, logs of deleted emails, or archive policies).

8. The preservation order should remain in effect for the pendency of this litigation (including any appeals) to ensure that no relevant evidence or records are lost or destroyed. This is necessary because the passage of time and Defendants' assertion that only limited records exist raise concerns about whether records might have been discarded; an explicit order will safeguard against spoliation.

9. **Costs and Attorney's Fees:** An award to Plaintiff of his reasonable costs and expenses of this action. Furthermore, if Plaintiff secures representation by counsel or if applicable

by law, an award of reasonable attorney's fees under 42 U.S.C. § 1988 and any other applicable provision, for having to bring this lawsuit to enforce his First Amendment rights.

10. **Other Relief:** Such other and further relief as the Court deems just and proper, including but not limited to **expedited consideration** of this action (given that it is a case about access to records and involves only injunctive relief), and if necessary, **in camera review** by the Court of any records for which Defendants claim confidentiality, to determine whether such claims are justified.

*Plaintiff does not seek punitive or compensatory damages, and no jury trial is demanded, as this suit is for equitable relief only.*

Dated: __1.5__, 2026.
Respectfully submitted,

*/s/ Azimi Aziz*

***Mohammed Azimi*** (Plaintiff, pro se)
*Address:*

    110 Turtle Creek Rd., Apt. 8
    Charlottesville, VA 22901

*Email:* mazimi899@outlook.com

### B. Exhibit List

The following exhibits are referenced in and attached to the Complaint:

- **Exhibit 1 - FOIA Response Letter (Jan. 2, 2026):** Letter from the Office of the Commonwealth's Attorney for Charlottesville to Plaintiff, responding to Plaintiff's Virginia FOIA request. The letter is dated January 2, 2026, and it states that all responsive records are attached. It also notes that a Juvenile Delinquency Docket for April 10, 2024 is in the Office's possession but is being withheld under Va. Code § 2.2-3704(B)(2) and § 16.1-305(C). *(Exhibit 1 consists of the 2-page letter, plus any included header or certification page.)*

- **Exhibit 2 - Email dated April 8, 2024 (5:37 PM):** An email printout produced by Defendants. The email was sent Monday, Apr. 8, 2024 at 5:37 PM, with the subject line "Canceled for 9/8/24." The body of the email states that interviews scheduled for

"tomorrow" are canceled because "Judge Pather is out sick." This exhibit is a single-page email (with header information showing sender, recipients, date, subject, etc., as printed).

- **Exhibit 3 - Email Chain (April 1, 2024):** An email thread produced by Defendants, beginning with an email on Apr. 1, 2024 at 6:55 PM. The chain discusses planning for interviews to be held at the courthouse on Tue., Apr. 9, 2024 at noon, presumably involving Judge Pather. This exhibit shows the scheduling correspondence leading up to the events of that week.

- **Exhibit 4 - Email Chain (April 9-11, 2024):** An email thread produced by Defendants relating to the Family Treatment Court ("FTC") Board meeting cancellation. It includes an email sent on Tue., Apr. 9, 2024 at 2:20 PM announcing that the FTC Board meeting scheduled for that afternoon is canceled due to the judge's illness, and a reply on Thu., Apr. 11, 2024 at 12:02 PM acknowledging or discussing the cancellation. This exhibit spans 2 pages (the initial email and the reply).

- **Exhibit 5 - Email dated Feb. 27, 2024:** An email produced by Defendants that predates the week of interest. Dated Feb. 27, 2024, it concerns an FTC Board meeting (agenda, scheduling, or related matter). This exhibit is included in Defendants' production despite being outside the April 8-12 timeframe, indicating it might have been part of an email thread or erroneously included.

- **Exhibit 6 - Email dated Feb. 28, 2024:** Another email produced by Defendants, dated Feb. 28, 2024, also regarding an FTC Board meeting. Like Exhibit 5, this is outside the requested date range. Exhibits 5 and 6 together suggest that Defendants' search collected some February communications that were not actually responsive to Plaintiff's request but were nevertheless provided.

- **Exhibit 7 - Plaintiff's Deficiency Letter (Jan. 3, 2026):** A follow-up letter from Plaintiff Mohammed Azimi to the Commonwealth's Attorney's Office, dated January 3, 2026. In this letter, Plaintiff details the shortcomings of the FOIA response, noting that only informal emails were produced and that key records were missing. The letter lists the specific categories of records sought (e.g., attendance logs, assignment records, substitute judge orders, bench calendars, etc.) and requests that the Office conduct a further search. It also requests that the emails be provided in native format with metadata. This exhibit is a multi-page letter (approximately 3 pages, including Plaintiff's signature block).

**(All exhibits are true copies of the originals. Exhibits 1-6 were provided by Defendants as a six-page packet attached to the FOIA response; Exhibit 7 is Plaintiff's correspondence sent in reply.)**