CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
August 20, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

Mohammed Azimi,

Plaintiff,

v.

Joseph D. Platania

and

Nina-Alice Antony,

Defendants.

Civil Action No. 3:26-cv-00001

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mohammed Azimi, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against the Commonwealth's Attorney Joseph D. Platania and the Deputy Commonwealth's Attorney Nina-Alice Antony.[1] Azimi alleges that Defendants violated his First Amendment rights by preventing him from obtaining official judicial records. (Compl. ¶ 28 (Dkt. 1).) Defendants move to dismiss Azimi's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Dkt. 9.) For the reasons stated below, the court will grant Defendants' motion to dismiss for failure to state a claim.

[1] Azimi has filed four other lawsuits in this court challenging various state officials' and attorneys' conduct during child-custody, divorce, and criminal proceedings involving him in state court. *See Azimi v. Bunch*, No. 3:25-cv-00020, 2025 WL 2988469 (W.D. Va. Oct. 23, 2025); *Azimi v. Worrell*, No. 3:25-cv-00043, 2025 WL 1570989 (W.D. Va. June 3, 2025); *Azimi v. Pustilnik*, No. 3:25-cv-00024, 2025 WL 1869595 (W.D. Va. July, 7, 2025); *Azimi v. Zug*, No. 3:25-cv-00041, 2026 WL 701680 (W.D. Va. Mar. 12, 2026).

## I. Background

In late 2025, Azimi made a request under the Virginia Freedom of Information Act ("VFOIA") to the Office of the Commonwealth's Attorney for Charlottesville. (Compl. ¶ 10.) Azimi sought official records identifying which judge presided in the Albemarle-Charlottesville Juvenile and Domestic Relations ("JDR") court during April 8–12, 2024, including judicial attendance logs and records of judicial assignment. (*Id.*) On January 2, 2026, Defendants responded to Azimi's FOIA and produced five documents, namely internal email correspondence. (*Id.* ¶¶ 11, 13; *see* Dkts. 1-2, 1-3, 1-4, 1-5.) In their response, Defendants also noted they were withholding a Juvenile Delinquency Docket from the week in question, citing the exemption disclosure under Virginia Code § 2.2-3704(B)(2) and 16.1-305(C). (Dkt. 1-2 at 1.)

Azimi asserts First Amendment violations of his right of access to judicial records and right of access to courts. (Compl. ¶¶ 23–32.) Azimi claims that Defendants' response to his FOIA requests was "nonresponsive and incomplete" and failed to provide direct evidence of which judge presided during the week in question. (*Id.* ¶ 14.) Azimi filed his complaint against Defendants on January 5, 2026, seeking declaratory and injunctive relief. (Dkt. 1.) On February 10, 2026, Defendants moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6). (Dkt. 9.) Azimi responded in opposition on February 17, 2026, (Dkt. 13), and Defendants replied on February 24, 2026, (Dkt. 15).[2]

---

[2] Azimi filed a sur-reply soon after his response. (*See* Dkt. 14.) Ordinarily, sur-replies are not permitted absent leave of court. W.D. Va. Local Rule 11(c)(1). But to afford Azimi flexibility as a *pro se* plaintiff, the court reviewed and considered his sur-reply. *Holloman v. Huntington Ingalls Inc.*, 499 F. Supp. 3d 269, 274 n.4 (E.D. Va. 2020). Moreover, while Defendant objects to the "exhibits" that Azimi attached to his sur-reply, these appear to be screenshot from publicly available

## II. Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over a complaint. *See* Fed. R. Civ. P. 12(b)(1). A defendant may bring either a facial or a factual challenge to subject matter jurisdiction. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). A facial challenge, which Defendants raise in this case, "contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks omitted). Accordingly, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). It does not "resolve contests surrounding the facts or the merits of a claim." *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (internal quotation marks omitted) (quoting *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023)). When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

---

government websites. "Courts routinely take judicial notice of information contained on state and federal government websites. *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017). The court will thus grant Azimi's motion for leave to file supplemental exhibits. (Dkt. 14.)

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To avoid dismissal under Rule 12(b)(6), the complaint must allege more than "labels and conclusions" or "naked assertion[s]" unsupported by "further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). At the same time, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *Bing v. Brivo Sys.*, 959 F.3d 605, 618 (4th Cir. 2020). At the motion to dismiss stage, the court may consider exhibits attached to a complaint as part of the pleadings if they are integral to the complaint and there is no dispute about their authenticity. *See* Fed. R. Civ. P. 10(c); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

## III. Analysis

### A. Subject Matter Jurisdiction

Defendants argue that Azimi lacks Article III standing to seek injunctive or declaratory relief and, therefore, request the court to dismiss his complaint for lack of subject matter jurisdiction. (Defs.' Mem. at 3–5 (Dkt. 10).) Under Article III of the Constitution, federal courts may exercise subject matter jurisdiction only over "cases" and "controversies." U.S. Const. Art. III, § 2; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). An "essential and

unchanging part" of this limitation is that "a plaintiff must have standing to sue." *Opiotennione v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 153 (4th Cir. 2025) (quoting *Lujan*, 504 U.S. at 560).

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61). "Where these requirements are not met, this court would exceed its authority if it adjudicated the merits of a dispute." *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) (cleaned up). For the following reasons, the court finds that Azimi has adequately alleged that he has Article III standing.

1. Azimi alleges a concrete injury-in-fact.

Defendants first argue that Azimi fails to establish an injury in fact. (Defs.' Mem. at 4.) To establish injury in fact, a plaintiff must have suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (cleaned up). "An 'informational injury' is a type of intangible injury that can constitute an Article III injury in fact." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998)). The mere existence of a statute authorizing legal action under certain circumstances does not, by itself, create standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). That is, "plaintiffs cannot establish a cognizable injury simply by pleading a statutory violation." *Garey v. James S. Farrin, P.C.,* 35 F.4th 917, 921 (4th Cir. 2022) (citing *Spokeo,* 578 U.S. at 341). Rather,

a concrete informational injury requires that the plaintiff "lack[] access to information to which he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect." *Dreher*, 856 F.3d at 345.

Azimi alleges that he has been injured by being "deprived of information that should be public" under the Virginia FOIA ("VFOIA")—specifically, information as to which judge presided during April 8–12, 2024. (Compl. ¶¶ 26, 28.) VFOIA "provides citizens of the Commonwealth of Virginia with a right of access to all public records held by the Commonwealth, its officers, employees, or agents." *McBurney v. Cuccinelli*, 616 F.3d 393, 396 (4th Cir. 2010) (citing Va. Code Ann. § 2.2–3700). Thus, Azimi is entitled to a statutory right to all public records to the extent allowed by VFOIA.

Moreover, Azimi adequately alleges that denial of information led to a concrete injury. "To determine whether the harm is 'real,' courts may look to: (1) whether the alleged . . . injury has a 'common law analogue' (a traditional right to sue); (2) whether 'Congress sought to prevent' the harm alleged; or (3) whether the statutory violation caused a harm with a 'real world effect.'" *Frazier v. Experian Info. Sols., Inc.*, No. CV GLR-18-0068, 2019 WL 13247929, at *3 (D. Md. July 25, 2019) (quoting *Dreher*, 856 F.3d at 345–46). In his complaint, Azimi alleges that Defendants' failure to provide him records impeded his First Amendment right to access judicial records. In cases involving records that qualify as judicial records, courts have recognized such a denial as a concrete, particularized injury. *See Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) (noting that any plaintiff "who seeks and is denied access to judicial records sustains an injury").

The court recognizes Defendants' argument that, on the merits, Azimi does not adequately allege any injury to his First Amendment rights. But "[c]ourts must not confuse standing with the merits." *Ass'n of Am. R.R.s v. Hudson*, 144 F.4th 582, 589 (4th Cir. 2025) (cleaned up). "With regard to the injury-in-fact prong of the standing test, a plaintiff need not prove the merits of its case in order to demonstrate that it has Article III standing." *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009) (cleaned up). "[O]therwise every unsuccessful plaintiff will have lacked standing in the first place." *Green v. City of Raleigh*, 523 F.3d 293, 299 (4th Cir. 2008) (cleaned up). For these reasons, the court finds Azimi has adequately alleged an injury-in-fact for purposes of its standing analysis.

2. Azimi alleges a traceable and redressable injury.

Defendants next argue that Azimi fails to allege that he suffered an injury traceable to Defendants or redressable by judicial action. (Defs.' Mem. at 4–5.) "In order to prove causation, a plaintiff must demonstrate that the injury fairly can be traced to the challenged action of the defendant, and not . . . resulting from the independent action of some third party not before the court." *Bishop v. Bartlett*, 575 F.3d 419, 425 (4th Cir. 2009) (cleaned up) (citing *Simon v. E. Ky. Welfare Rts. Org.,* 426 U.S. 26, 41–42 (1976)).

Defendants argue that Azimi's alleged injury is not traceable to them, as they are not the custodians of certain records requested by Azimi, including records as to which judge presided during April 8–12, 2024. (Defs. Mem. at 4.) To be sure, the appropriate custodian of those records appears to be the Albemarle-Charlottesville JDR Clerk's office. *See* Va. Code. Ann. § 16.1–69.54:1B ("Requests for copies of nonconfidential court records maintained in

individual case files shall be made to the clerk of a district court."); *see also Daily Press, LLC v. Off. of Exec. Sec'y of Supreme Ct.*, 293 Va. 551, 559–60 (2017) ("[A] request for court records must be made to the custodian of those records, the clerks of court.").

However, although they are prohibited from disclosing them, Defendants do possess some records responsive to Azimi's requests such as a Juvenile Delinquency Docket from the week in question. (Dkt. 1-2.) While Defendants argue that they are exempt from disclosing this record under state law, again, "[c]ourts must not confuse standing with the merits," as a plaintiff's "standing to bring a case does not depend upon [their] ultimate success on the merits underlying [their] case." *Ass'n of Am. R.R.s*, 144 F.4th at 589 (cleaned up). Mindful that a plaintiff's burden to show traceability is "relatively modest" at the motion-to-dismiss stage, *Bennett v. Spear*, 520 U.S. 154, 171 (1997), the court finds that Azimi's alleged injury—denial of access to the records responsive to his request—is traceable to Defendants. For this reason, the court finds Azimi's alleged injury is also redressable. *El Ali v. Barr*, 473 F. Supp. 3d 479, 501 (D. Md. 2020) ("Traceability and redressability are best addressed jointly as 'they rise or fall together.'" (quoting *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 323 n.1 (4th Cir. 2002))).

**B. Failure to State a Claim**

Azimi claims that Defendants' denials of his FOIA requests violated his First Amendment right to access judicial records as well as his First Amendment access to courts. (Compl. ¶ 23–32.) Defendants argue that the complaint does not sufficiently allege a claim

under either theory. For the following reasons, the court agrees with Defendants that Azimi fails to state a claim on either front.

1. <u>Azimi fails to state a denial of access to judicial records claim.</u>

Azimi alleges that he was denied records identifying the presiding judge and related judicial assignment records for the week of April 8–12, 2024. (Compl. ¶ 26.) "It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). But "[u]nlike the common-law right, the First Amendment right of access extends only to certain judicial proceedings and records." *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171 (4th Cir. 2024). Courts in the Fourth Circuit apply a two-prong test to determine whether a First Amendment right of access is available for a particular proceeding: asking (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (quoting *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 8–10 (1986)).

The court begins and ends with the first prong. Juvenile proceedings in Virginia are not—and have never historically been—open to the public. *See* Va. Code Ann. § 16.1–302(C) ("The general public shall be excluded from all juvenile court hearings and only such persons admitted as the judge shall deem proper."). Virginia juvenile dockets are available only to interested parties "by order of the court." *See id.* § 16.1–305(A)(4). This is in line with the United States's long historical tradition of shielding juvenile proceedings from the public. *See*

*Smith v. Daily Mail Publ'g Co.,* 443 U.S. 97, 105 (1979) ("[A]ll 50 states have statutes that provide in some way for confidentiality [of juvenile proceedings]."); *id.* at 107 (Rehnquist, J., concurring) ("It is a hallmark of our juvenile justice system in the United States that virtually from its inception . . . its proceedings have been conducted outside of the public's full gaze and . . . shielded from publicity.").

Likely for this reason, neither the Supreme Court nor the Fourth Circuit have extended a right of general public's access to juvenile proceedings. To the contrary, federal courts have consistently held that there is no First Amendment right of access to juvenile proceedings. *United States v. Three Juvs.*, 862 F. Supp. 651, 657 (D. Mass. 1994), *aff'd*, 61 F.3d 86 (1st Cir. 1995) (collecting cases); *Ky. Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 864 (E.D. Ky. 2005). Because the juvenile proceedings at issue have not "historically been open to the press and general public," *Goetz*, 886 F.2d at 64, Azimi has no First Amendment right to the juvenile records in question. (Compl. ¶ 15.)

Azimi's right of access claim fails for another reason. For a right of access to a document to exist under the First Amendment, the document must be a "judicial record." *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013). The Fourth Circuit has held that "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." *Id.* The documents identifying which judge presided over court proceedings on the days in question and related administrative assignments played no role in any adjudicative process or adjudicate any substantive rights. *See Covington v. Semones*, No. 7:06-cv-00614, 2007 WL 1170644, at *2 (W.D.

Va. Apr. 17, 2007) ("[T]he First Amendment right attaches only to particular documents, such as those filed in connection with a dispositive motion in a civil case and those filed in connection with plea hearings and sentences in criminal matters."); *United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 69 F.4th 1, 15 (1st Cir. 2023) (distinguishing judicial records from "documents that relate merely to the judge's role in management of the trial" (cleaned up)). Nor were the requested documents even filed with the court. *See Washington v. Bruraker*, No. 3:02-cv-00106, 2015 WL 6673177, at *5 (W.D. Va. Mar. 29, 2015) (the right of access is "generally designed to allow the public access to documents *as they are filed with the court"* (emphasis in original)); *In re Pol'y Mgmt. Sys. Corp.*, 67 F.3d 296, at *3 (4th Cir. 1995) (unpublished table opinion) (holding that "the mere filing of a document" is still not enough to "trigger[] the First Amendment guarantee of access"). Thus, Azimi's requested document does not achieve the status of judicial documents to which the First Amendment presumption of public access attaches.

Rather, Azimi's request made to the Commonwealth's Attorney's Office was for access to government records. The Supreme Court has ruled that the First Amendment does not "mandate[] a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality opinion). The Fourth Circuit has also noted that recognized that "there is generally no First Amendment claim based on the government's denial of access" to information "compiled, controlled, and maintained by the government." *Fusaro v. Cogan*, 930 F.3d 241, 250 (4th Cir. 2019). Thus, the First Amendment does not require the Commonwealth's Attorney's Office to disclose the

records requested by Azimi. *See Houchins*, 438 U.S. at 14 ("The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act.").

2. Azimi fails to state a denial of access to courts claim.

While Azimi's complaint only makes one claim for denial of access to judicial records, (*See* Compl. at 10), Defendants contend that Azimi embedded a second cause of action—a denial of access to courts claim—within his complaint. (Defs.' Mem. at 6.) For this reason, and construing Azimi's complaint liberally, the court analyzes whether Azimi plausibly alleged a denial of access to courts claim.

Azimi claims that his "ability to petition the government for redress (for example, to challenge any decisions from that week or to seek appellate review) is impeded since he cannot even name the judge in question in any such petition." (Compl. ¶ 28.) A plaintiff's right of access to courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, a plaintiff alleging a denial of access claim must plead facts showing that the defendant actually "hindered his efforts to pursue" a nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). This means that a plaintiff must identify a "nonfrivolous," "arguable" legal claim that was lost because of the defendant's alleged interference with the plaintiff's access to court. *Christopher*, 536 U.S. at 415-16 (quoting *Casey*, 518 U.S. at 353). In other words, "the cause of action in the underlying action, 'whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts

frustrating the litigation.'" *Conner v. Henry Cnty. Sheriff's Off.*, No. 7:23-cv-00061, 2023 WL 3026740, at *2 (W.D. Va. Apr. 20, 2023) (quoting *Christopher*, 536 U.S. at 415).

Azimi's claims fall well short of this standard. He does not allege facts identifying a "nonfrivolous," "arguable" legal claim that he lost because of Defendant's actions. He has not indicated, for example, that he missed a filing deadline or failed to present a claim. *Cobb v. Powers*, C.A. No. 3:08-1804-TLW-JRM, 2008 WL 5192620, at *5–6 (D.S.C. Dec. 9, 2008). At most, he speculates that hypothetical, non-specific injuries that might result. (*See* Pl.'s Resp. at 12 (Dkt. 13) ("Plaintiff cannot frame legal arguments—such as a challenge to any action during that week").) Because Azimi has not alleged that any legal action on his part has actually been hindered or negatively impacted by Defendants' conduct, Azimi does not state a denial of access to court claim.

**C. Motion to Disqualify**

Next, Azimi moves to disqualify defense counsel because they also represent James Hingeley, a defendant in another lawsuit filed by Azimi in this court. (*See generally* Dkt. 12.) *Azimi v. Bunch*, No. 3:25-cv-00020, 2025 WL 2988469 (W.D. Va. Oct. 23, 2025). Resolving a motion to disqualify counsel requires "a two-step inquiry." *United States v. Google LLC*, 698 F. Supp. 3d 876, 884 (E.D. Va. 2023). First, the court must determine "whether the lawyer or firm has violated the Virginia Rules of Professional Conduct." *Id.* Second, if there was a violation, the "court must determine whether disqualification is the appropriate sanction." *Id.* at 885. Because a motion to disqualify counsel "can be used improperly for purely strategic purposes, . . . the motion is subject to close inspection." *Id.* (cleaned up). The moving party

"bears a high standard of proof" and "may not . . . rest[] on mere speculation." *Id.* (cleaned up). "Conclusory allegations are not a sufficient basis on which to grant a motion to disqualify counsel." *Id.*

Virginia Rule of Professional Conduct 1.7 prevents lawyers from representing a client if their representation "will be directly adverse to another client" or "materially limit[s]" their representation. But Azimi presents no plausible allegation that defense counsel's representation of Hingeley in *Azimi v. Bunch* will be directly adverse to their representation of Defendant Platania in this case. Neither does he present any plausible allegation that defense counsel's representation of one will be materially limited by their responsibility to the other defendant. In fact, as Defendants point out, Azimi's argument is largely based on the fact that defense counsel's representation of both Hingeley and Platania is adverse to his interest. (Dkt. 16 at 4.) And Azimi's motion to disqualify otherwise makes out no other violation of any Virginia Rule of Professional Conduct. For this reason, the court will deny Azimi's motion for disqualification.

## IV. Conclusion and Order

For these reasons, the court **GRANTS** Azimi's motion for leave to file supplemental exhibits. (Dkt. 14.) The court **GRANTS** Defendant's motion to dismiss Azimi's complaint,

(Dkt. 9), and **DISMISSES** the complaint **without prejudice**. Azimi's motion to disqualify counsel, (Dkt. 12), is **DENIED**.

The Clerk is directed to close the case and to send a copy of this Order to Azimi and all counsel of record.

**IT IS SO ORDERED.**

**ENTERED** this 20th day of August, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE